**M. MOORE et al., Appellants,**

v.

**STATE of Texas et al., Appellees.**

**No. 218.**

Court of Civil Appeals of Texas.

Tyler.

June 9, 1966.

Harry M. Jones, Jones & Jones, Mineola, Clyde Elliott, Jr., Elliott & Elliott, Canton, for appellants.

James T. Flynt, Quitman, for appellees.

SELLERS, Justice.

This is a condemnation case in which the State of Texas and the County of Wood recovered of appellant Moore 0.276 acre of land for road purposes. After a trial in the County Court of Wood County, the jury found that the 0.276 acre of land taken for the road had a value of $2,000.00, and that the difference between the remainder of the property before and after taking was $2,000.00, making the damages due the appellants in the sum of $4,000.00. The State filed a motion for new trial in which it asked the Court to grant a remittitur in its favor in the sum of $2,000.00 which the Court granted and entered a final judgment for appellants in the sum of $2,000.00 from which judgment the appellants have duly prosecuted this appeal.

The one question on this appeal is whether the trial court abused its discretion in granting the remittitur. This court has concluded that it did.

The appeal brings up an agreed statement of facts from which we quote the testimony of Mr. Pegues:

"*TOM PEGUES:* After having been duly sworn testified that he was 44 years old, lived in Mineola, Texas, and had been a licensed real estate broker in Wood County, Texas, for the past twenty years.

He further testified that he was also in the insurance business and appraisal business, that he had appraised real properties for the Texas State Highway Department, for banks, for savings and loan associations, for Wood County, Texas, and for individuals. Shortly after suit was filed in this case he was requested by Mr. Moore, the defendant, to appraise his property. He first went upon the property in February of 1965 and after an investigation found that 0.276 acre of land was being taken for right-of-way purposes; that prior to the taking Mr. Moore had 4.44 acres of land; that after the taking, Mr. Moore had a remainder of 4.164 acres of land and that the strip being taken was from 39 feet to 45 feet wide and approximately 320 feet long; that the property prior to condemnation had a brick home situated upon same with 2800 square feet of living space, a small barn at the rear of the home and a double carport; that the home was located approximately four miles North of Mineola and five or six miles South of Quitman; that the home was approximately six years old, well maintained and well furnished with draperies and carpets; that the home contained three bedrooms, two baths, a den, kitchen, living room and dining room; that the home had utilities of telephone and electricity and butane gas; that such home was in a nice neighborhood; that across the highway Mr. Long owned a home in the $150,000 category; that next-door on the same side of the highway as the Moore property, Mr. Gearner owned a $25,000 home immediately to the South of the Moore property and next-door on the same side of the highway to the South of the Moore property, the Ludlams owned a home in the $15,-000 to $16,000 class.

"Mr. Pegues further stated that he knew the market value of real property in Wood County, Texas, and that after having examined the Moore property involved in this lawsuit, he formed an

opinion that the cash market value of the entire property immediately before condemnation was $27,500.00; that in addition to the other utilities, the Moore home was furnished water from a deep well located upon the property which was pumped and piped into the house.

"Mr. Pegues testified that the part taken had three large shade trees, two pecans and one elm; that the pecan trees were approximately 25 years old and the elm tree was approximately 20 inches in diameter; that prior to condemnation the 0.276 acre of land was a portion of the lawn to the Moore property; that in addition to the three shade trees and the 39 to 45 feet of lawn taken for right-of-way purposes that a portion of the paved driveway leading from the highway to the house was also taken.

"Mr. Pegues testified that, in his opinion, the cash market value of the 0.276 acre taken for right-of-way purposes immediately prior to January 12, 1965, was $2,000.00.

"He testified that the 4.164 acre remainder immediately prior to condemnation, in his opinion, had a reasonable cash market value of $25,500.00.

"He stated that, in his opinion, the taking of the 0.276 acre for right-of-way purposes damaged the remainder of 4.164 acres in the following respects:

"That it would be necessary to relandscape the area between the house and the highway because the shade trees had been taken, that it would be necessary to sandblast the brick to remove the dust created during construction and which would accumulate upon the brick to the house, that the taking of the 0.276 acre of land, considering that the State would build additional highway upon it would necessarily mean the house closer to the highway and, in his opinion, make the remainder less desirable among prospective purchasers in the market. After considering these elements of damage,

Mr. Pegues testified that, in his opinion, the cash market value of the 4.164 acre remainder immediately after the taking of the 0.276 acre part for right-of-way was $23,000.00.

"Mr. Pegues testified that in the immediate area of the Moore property he could not find any sales which he considered comparable to the Moore property within the past five years, however, he did testify that he was acquainted with sales of property three and four miles from the Moore property along the same highway but because of the conditions of such property they were not, in his opinion, sufficiently comparable to use as a basis for forming his opinion. He testified that he had gone upon the Moore property four times during the period from January 12, 1965, until the time of the trial and that he based his opinion on market value of this particular property, upon his experience in the real estate, appraisal and insurance business as well as his experience in having bought and sold property himself in Wood County, Texas; he further testified that he did not charge Mr. Moore for this appraisal or for coming to Court."

■■■ The rule to govern this Court in passing upon a remittitur granted by the trial court as announced by the Supreme Court in the case of Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835, opinion by Justice Smith, is as follows:

"We interpret the above holding as meaning that where the trial judge has ordered a party to remit a portion of the jury verdict as a condition for overruling a motion for new trial, the Court of Civil Appeals, in passing upon such action under Rule 328, supra, should allow the trial court's action to stand unless it be of the opinion that the remittitur ordered by the trial court, when considered in the light of the whole record, would render the order of remittitur manifestly unjust. If, in the light of all the facts and circumstances, the trial

court's order of remittitur was manifestly unjust, the Court of Civil Appeals should restore the remittitur or such part thereof as the Court of Civil Appeals deems necessary to prevent the order from being manifestly unjust and render such judgment as the trial court should have rendered."

This court has reached the conclusion that the trial court's remittitur is manifestly unjust under the record as presented to this Court and in our opinion a restoring of the full amount of the remittitur will better prevent an unjust judgment. This Court therefore reverses the judgment of the trial court and here enters judgment for the appellants for the sum of $4,000.00, the same being in our judgment, the amount for which this Court feels should be recovered by appellants in order to prevent the judgment from being manifestly unjust, and it is so ordered.

The judgment of the trial court is reversed and judgment here rendered for appellants in the sum of $4,000.00.